```
                    UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF NEW MEXICO

In re:
PAUL L. CORTES,
     Debtor.                              No. 7-10-10294 SS

US TRUSTEE,
     Plaintiff,,
v.                                        Adv. No. 10-1149 S

PAUL L. CORTES,
     Defendant.
```

**MEMORANDUM OPINION AFTER TRIAL ON THE
MERITS OF PLAINTIFF'S COMPLAINT SEEKING
TO DENY DISCHARGE UNDER SECTION 727**

This matter came before the Court for trial on the merits of Plaintiff's Complaint to deny Debtor a discharge under 11 U.S.C. § 727 ("Complaint"). The United States Trustee, Plaintiff, appeared through its attorney Leonard Martinez-Metzgar. Defendant Paul L. Cortes appeared through his attorney William H. Ivry. For the reasons set forth below, the Court finds that it should enter judgment in favor of Defendant and dismiss Plaintiff's case.[1]

Bankruptcy Code section 727 governs discharges of Chapter 7 debtors. It states, in relevant part:

> **§ 727. Discharge**
>
> (a) The court shall grant the debtor a discharge, unless--
> ...

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(J); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

```
        (2) the debtor, with intent to hinder, delay, or
            defraud a creditor or an officer of the
            estate charged with custody of property under
            this title, has transferred, removed,
            destroyed, mutilated, or concealed, or has
            permitted to be transferred, removed,
            destroyed, mutilated, or concealed--
            (A) property of the debtor, within one year
            before the date of the filing of the
            petition; or
            (B) property of the estate, after the date of
            the filing of the petition;
     ...
        (4) the debtor knowingly and fraudulently, in or
            in connection with the case--
            (A) made a false oath or account[.]
```

**PLAINTIFF'S COMPLAINT**

The Complaint seeks to deny Debtor's discharge under the two quoted subsections of section 727. Under the first subsection, Plaintiff alleges that Debtor transferred assets and concealed them into the one year preceding his bankruptcy filing, which occurred on January 27, 2010. Under the second subsection, Plaintiff alleges that by omitting the concealed assets from the documents on file with the Court and misstating his ownership thereof at the first meeting of creditors he has made a false oath.

**SECTION 727(a)(2) CLAIM**

For its section 727(a)(2) claim, Plaintiff alleges concealment of two different assets.

**1.    BUSINESS PROPERTY**

Page -2-

Defendant was the 100% owner and sole member of Chasing Skirts, LLC, which operated a women's clothing store in Santa Fe, New Mexico from approximately March 2004 through August 2008. The business location was 66 E. San Francisco Street, #15.

Defendant lives with Tabatha Wickleff, his girlfriend, who is his ex-wife's daughter from a previous marriage. Ms. Wickleff opened a women's clothing store called "Desires" in August 2008. Desires is located at 66 E. San Francisco Street, #14, in the suite next to the former location of Chasing Skirts, LLC.

Plaintiff also alleges that Defendant is a joint signatory on the Desires business bank account. It alleges that Defendant admitted in an unrelated state court proceeding that he transferred his business to Ms. Wickleff in September 2008 after several lawsuits were filed against him. And, finally, the Plaintiff alleges that Defendant has disregarded the separate legal structure of Chasing Skirts LLC and has in fact operated as a sole proprietor. Therefore, the Plaintiff claims Defendant has retained the benefits of a continuing ownership of the Chasing Skirts business.

## 2. THE RED PORSCHE

During an examination Defendant admitted that he owned a red Porsche but stated that it had been repossessed in the summer of 2009. Plaintiff alleges, however, that on August 12, 2008 Defendant transferred the title of the 1994 red Porsche to his

brother Rudy DeVargas.  Plaintiff also claims that on July 12, 2010, Defendant had a red Porsche parked in his garage. Plaintiff was informed that Defendant continued to drive the red Porsche after January 27, 2009 and has continued to enjoy the benefits of ownership after January 27, 2009.

**SECTION 727(a)(4) CLAIM**

For its section 727(a)(4) claim, Plaintiff alleges that at the first meeting of creditors the Defendant testified under oath that the information contained in his schedules and statement of financial affairs was true and correct.  The schedules and statement of financial affairs do not disclose ownership of a red Porsche, nor do they disclose business interests.  Question 10 of the Statement of Financial Affairs discloses only a transfer of a 1998 GMC Sierra pickup within two years of his bankruptcy filing.

**DISCUSSION**

Debtor filed his bankruptcy on January 27, 2010.  The alleged transfer of business assets to Ms. Wickleff was in August 2008.  The transfer of the red Porsche was in August 2008.  Both of these transfers were before one year before the filing of the bankruptcy.  The Plaintiff relies, however, on the doctrine of "continuing concealment."

Perhaps the most widely known case of continuing concealment is Thibodeaux v. Olivier (In re Olivier), 819 F.2d 550, 554-555 (5th Cir. 1987):

On its face, section 727(a)(2)(A) addresses only transfers or concealment of property occurring within a year before bankruptcy. Here the purported transfer by appellants occurred more than a year before bankruptcy, but appellants continued the concealment of their secretly retained interest in the property. The courts below relied on the well-settled doctrine that in this character of situation the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, that such concealment is within the reach of section 727(a)(2)(A).

The doctrine of continuing concealment developed and was followed under predecessor provisions of the bankruptcy laws[FN7] and continues to be followed in more contemporary decisions.[FN8] Recognizing that we have not heretofore addressed whether the continuing concealment doctrine will be followed within this Circuit in discharge cases involving 11 U.S.C. § 727(a)(2)(A), we now hold that it may be appropriately applied to such cases.[FN9]

---

[FN7]. E.g., Green v. Toy, 171 F.2d 979, 979 (1st Cir. 1949) (ruling that transfers of real estate to a dummy corporation held by the bankrupts' sons more than a year before bankruptcy filing were "a continuing concealment of assets"); In re Groth, 36 F.2d 41, 42 (7th Cir. 1929)( "[I]f these acts had as their purpose the concealment of assets ..., which concealment continued during the period when these proceedings in bankruptcy were contemplated, the lapse of a year [between the acts and bankruptcy] would not prevent such concealment from coming within the condemnation of the statute."); In re Ulrich, 18 F.Supp. 919, 920 (S.D. N.Y. 1937)(holding that placing ownership of all stock for the bankrupt's corporation in the name of an employee without a real ownership interest five years before bankruptcy prevented discharge; "While the concealment commenced several years before bankruptcy, it continued down to the time of bankruptcy and is within the scope of the statute."), aff'd without opinion, 95 F.2d 1018 (2d Cir. 1938).

[FN8]. E.g., [Friedell v. Kauffman () In re Kauffman,[675 F.2d 127, 128 (7th Cir. 1981)(per curium)] supra; [Sacklow v. Vecchione () In re Vecchione, [407 F.Supp.

>     609, 615 (E.D. N.Y. 1976)] supra.  See also cases cited
>     supra notes 5-6.
>
>     [FN9]. Again, we do not purport to speak to the
>     applications of the doctrine in all its possible
>     ramifications under section 727(a)(2)(A) or in
>     significantly different factual contexts.

See also Keeney v. Smith (In re Keeney), 227 F.3d 679, 684 (6th Cir. 2000)("Under the 'continuing concealment' doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing.")(Quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)).

"What is critical under the concealment provision of § 727(a) is whether there is concealment of property, not whether there is concealment of a transfer." Rosen v. Bezner (In re Rosen), 996 F.2d 1527, 1532 (3rd Cir. 1993).

>     In a situation involving a transfer of title
>     coupled with retention of the benefits of ownership,
>     there may, indeed, be a concealment of property.  Where
>     this is the case, however, the concealment is present
>     not because retention of the benefits of ownership
>     conceals the fact that the debtor no longer has legal
>     title, but rather because the transfer of title
>     represents to the world that the debtor has transferred
>     away all his interest in the property while in reality
>     he has retained some secret interest-a secret interest
>     of which retention of the benefits of ownership may be
>     evidence.  **A legally relevant concealment can exist,
>     however, only if there is, in fact, some secret
>     interest[FN4] in the property retained by the debtor.**
>     See, e.g., In re Smith, 11 B.R. 20, 22 (Bankr. N.D.
>     Ohio 1981)("Concealment has generally been defined as
>     the transfer of legal title to property to a third
>     party with the retention of a secret interest by the

Case 10-01149-t    Doc 69    Filed 12/05/12    Entered 12/05/12 09:42:49 Page 6 of 14

>     Bankrupt.") (quoted in Olivier, 819 F.2d at 553); In re
>     Vecchione, 407 F.Supp. 609, 614 (E.D. N.Y. 1976)
>     (same); cf. Thompson v. Eck, 149 F.2d 631, (2d Cir.
>     1945)(noting that "the bankrupt must have some legal
>     interest in the property before he can be charged with
>     its concealment" (citation omitted)).
>
>     [FN4.] It is undisputed that Rosen's transfer of legal
>     title to his wife was valid, even though it eventually
>     was avoided by the court on motion of the trustee.

Id. (Emphasis added.)

**FACTS**

At the start of trial the parties stipulated to admission of all of both Plaintiff's and Defendant's exhibits. One of Plaintiff's exhibits was a garment purchased at Desires. Three exhibits were depositions of witnesses. One is a transcript of the first meeting of creditors. One is a transcript of a 2004 examination of Defendant. Plaintiff also presented nine witnesses. At the start of trial, Defendant announced that he would present three witnesses. At the conclusion of Plaintiff's case, however, Defendant moved for dismissal under Fed.R.Civ.P. 52(c), which the Court took under advisement. Defendant then rested, as his witnesses had already presented his desired evidence during their cross examinations.

1. The Court finds that Plaintiff did not establish by a preponderance of the evidence that Defendant owned any interest whatsoever in Desires or retained any interest whatsoever in Chasing Skirts, LLC. Defendant and Ms. Wickliff both presented uncontroverted testimony that 1) Defendant ceased operating

Page -7-

Chasing Skirts, LLC in 2008, 2) Ms. Wickliff obtained a business license and zoning clearance in August 2008 to commence her business in September 2008, which she did, and 3) Defendant has no ownership interest in Desires but is an employee. Neither Defendant nor Ms. Wickliff concealed the fact that Defendant helps keep Desires' books, he is a signatory on the checking account, he is free to write himself checks, or that the checks he writes are probably for their joint expenses as well as business expenses. They live together as a couple. Defendant shared his knowledge and contacts with Ms. Wickliff when she was establishing her business. Desires is Ms. Wickliff's sole proprietorship. The fact that one business terminated just before the other one commenced was logically explained by the testimony. Similarly, the Court found nothing nefarious about the close physical locations of the two shops.

At the time Defendant filed bankruptcy, it is apparent that there was nothing left of Chasing Skirts, LLC. His Schedule B showed that he was in possession of inventory and equipment of his "former business", Chasing Skirts, LLC, with a listed value of $2,325. His Statement of Financial Affairs question 4 lists a lawsuit against him and Chasing Skirts, LLC for money owed, foreclosure of personal property (the business assets), and post-judgment writ of replevin, all for which a default judgment of $102,688.82 was entered on November 18, 2009. Therefore, in

reality, his (or Chasing Skirt's) property had been foreclosed before the bankruptcy and all business property was subject to replevin. To the extent some similar inventory or fixtures were transferred to Ms. Wycliff, the assets in her possession would still be subject to the lender's security interest and would have been similarly foreclosed and subject to replevin. Plaintiff did not offer sufficient proof that any assets of any material value had been transferred in any event. Although the presence of some garment labels for Chasing Skirts in the inventory of Desires suggests that some inventory was transferred, the amount or value, if any, was not established.

Plaintiff also presented considerable testimony about credit card processing machines which Chasing Skirts, LLC had allowed Desires to use on the condition that it continue to pay loans outstanding against the machines. Plaintiff's witness explained the mechanics of these loans; after six months of sales history a merchant could obtain a credit card processing machine and borrow money on the condition that a percentage of credit card receipts would repay the loan over time. Desires had no sales history, and this arrangement 1) allowed Defendant to have payments made on a machine he was responsible for making payments on, and 2) allowed Desires to process credit cards. While this agreement was probably violative of Defendant's agreement with the credit card companies, it does not prove or suggest that Defendant had

Case 10-01149-t    Doc 69    Filed 12/05/12    Entered 12/05/12 09:42:49 Page 9 of 14

any interest in Desires itself. Nor does it demonstrate that sales made by Desires were, in fact, sales attributable to Chasing Skirts simply because they were charged on Chasing Skirts credit card machines. Plaintiff had access to all of Chasing Skirts bank accounts and it did not demonstrate that Chasing Skirts was actively engaged in anything, other than allowing Desires to use the machines.

2. The Court finds that Plaintiff did not establish by a preponderance of the evidence that Defendant owned any interest whatsoever in the red Porsche he sold to his brother. The uncontroverted evidence of both Defendant and his brother was that in August 2008 his brother was in need of a car, had cash, and was interested in buying Defendant's red Porsche. Defendant's Exhibits B through D document the transfer of title on August 13, 2008 in exchange for $5,000.00. The evidence is uncontroverted that Defendant's brother lives three doors away from the Defendant and did not have his own garage. The Porsche had a cloth top and was subject to leaking when it rained or snowed. The Court can take judicial notice that Santa Fe, New Mexico often has inclement weather, particularly in the winter.[2] Defendant had an empty garage attached to his house that did not lock, and his brother was free to put the vehicle in there as he

---

[2] "Inclement" is a relative term, of course. Most New Mexicans welcome snow or rain.

Page -10-

Case 10-01149-t  Doc 69  Filed 12/05/12  Entered 12/05/12 09:42:49 Page 10 of 14

chose.  Both witnesses testified that after the sale Defendant did not make any payments for insurance, maintenance, registration, or otherwise.  Defendant admitted to driving the car a few times; his brother testified that he allowed his brother to drive it "less than ten times."  The Court finds that the transfer of the red Porsche was a bona fide transfer to Defendant's brother and Defendant retained no interest whatsoever in the vehicle.

The Court further finds that any testimony regarding Porsche vehicles that may have been unclear was not intentional.  Defendant's uncontroverted testimony was that he had owned two Porsche vehicles, one blue and one red.  The red one was sold to his brother; the blue one was repossessed by its lienholder.  Defendant believed the repossession was more than two years before the case, and there was no better evidence offered.  At the first meeting of creditors, the following questions and answers took place:

> Trustee:  You stated that the Porsche was repossessed in June?
> Answer:   Uh-huh, yes.
> Trustee:  So it's gone?
> Answer:   It's gone.

The Trustee did not inquire about the color of the vehicle repossessed in June.

3.  The Court finds that Plaintiff did not establish by a preponderance of the evidence that Defendant had an intent to

hinder, delay, or defraud a creditor or an officer of the estate. The Court readily concedes that a Debtor never would be expected to confess to an intent to hinder, delay, or defraud a creditor. Therefore, most denial of discharge cases also look to the facts and circumstances surrounding any alleged misbehavior. See, e.g., Rosen, 996 F.2d at 1533-34 (Third Circuit Court of Appeals remands case to bankruptcy court for a factual determination if the debtor in fact retained any secret interest during the relevant period and also whether any concealment was accompanied by an actual intent to hinder or defraud creditors. The Court directed the bankruptcy court to consider Rosen's own testimony regarding his state of mind as well as the surrounding circumstantial evidence of intent.) In this case, Defendant testified about his situation in the summer of 2008; many lawsuits were pending, his business had been declining for years, his ex-wife had claimed that Defendant had sexually abused their minor daughter with the consequential criminal charges pending against him, and he needed money to live, to pay lawyers, and to fund his business. He faced reality and ultimately decided to file a bankruptcy petition. The Court finds nothing in that situation which would suggest circumstantial evidence of intent to defraud his creditors.

Plaintiff suggested that Defendant's actions in transferring the business property and the red Porsche were due to an upcoming

child support modification hearing expected in the fall of 2008. Defendant's ex-wife's attorney was called as a witness to present evidence on this point. The attorney testified that he had been hired after Defendant's ex-wife had filed the motion to modify, and he really did not recall any other details. Therefore, the Court does not find it more likely than not that the child support issue had anything to do with the closing of Chasing Skirts. Furthermore, Defendant used an experienced bankruptcy attorney who surely would have told him that a bankruptcy petition does not stay an action "for the establishment or modification of an order for domestic support obligations." 11 U.S.C. § 362(b)(2)(A)(ii).

4. The Court's final finding is that Plaintiff did not provide any evidence that Defendant disregarded the separate legal structure of Chasing Skirts LLC and in fact operated as a sole proprietor. The Court can find no reason to declare that the assets of Chasing Skirts were in fact Defendant's personal assets. Consequently, any transfer of assets to Ms. Wickliff was from Chasing Skirts rather than from Defendant.

**CONCLUSIONS OF LAW**

Defendant did not conceal any assets within one year before the filing of his bankruptcy petition. The assets Plaintiff attempted to demonstrate as property of Defendant were not Defendant's property during the one year before the bankruptcy

and therefore he did not need to list them on the statements or schedules. Any transfer of property from Chasing Skirts to Ms. Wickliff was not a transfer of property of the Defendant. Defendant did not knowingly or fraudulently make a false oath in connection with his bankruptcy case.

The Court will enter a Judgment in favor of Defendant, declaring that he will receive his bankruptcy discharge. Plaintiff's case will be dismissed with prejudice.

                                        Honorable James S. Starzynski
                                        United States Bankruptcy Judge

Date entered on docket: December 5, 2012

Copies to:

Leonard K Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103-0608

William H Ivry
PO Box 263
Santa Fe, NM 87504-0263